# STATE OF MICHIGAN

# COURT OF APPEALS

WNC HOUSING LP, SHELTER RESOURCES
CORPORATION, and WNC INSTITUTIONAL
TAX CREDIT FUND XVII LP,

Plaintiffs-Appellees/Cross-
Appellants,

v

SHELBORNE DEVELOPMENT COMPANY
LLC, KARLEY SQUARE GP LLC,
SHELBORNE PARK GP LLC, and KATHY S.
MAKINO, a/k/a KATHY S. MAKINO-LEIPSITZ,

Defendants-Appellants/Cross-
Appellees.

UNPUBLISHED
June 29, 2017

No. 324249
Wayne Circuit Court
LC No. 12-003812-CH

ON REMAND

Before: HOEKSTRA, P.J., and METER and M.J. KELLY, JJ.

PER CURIAM.

Defendants originally appealed a September 30, 2014, judgment issued in favor of
plaintiffs after a bench trial. The trial court awarded $879,426 for the purchase of a debt,
$47,400 for an outstanding water bill, $313,955 for attorney fees, $69,001.56 in statutory
interest, and $7,321.78 in costs. The court also awarded case-evaluation sanctions. The parties
raised a plethora of issues on appeal. We affirmed in all respects except for four, stating:

> (1) we reverse with respect to the award of $300 for case-evaluation fees, (2) we
> reverse with respect to holding [defendant Kathy Makino] individually liable for
> the water bill, (3) we hold that [defendant Shelborne Development Company
> LLC] is liable for the full amount of the water bill, and (4) we hold that Shelborne
> Development is liable for the unpaid taxes pertaining to [a construction project
> referred to as the "Midtown project"]. [*WNC Housing LP v Shelborne Dev Co
> LLC*, unpublished opinion per curiam of the Court of Appeals (Docket No.
> 324249, issued February 23, 2016) , unpub op at 10.]

-1-

A detailed factual summary is not necessary for purposes of the present opinion, which is limited in scope. We note, however, that a mortgage loan for a particular real-estate development project, the "Shelborne Park project," was in default, and to avoid foreclosure, plaintiffs purchased the debt at a negotiated price. The trial court found Makino to be a guarantor with regard to this purchase, and we affirmed this finding. *Id.*, unpub op at 4-5. Makino filed an application for leave to appeal in the Michigan Supreme Court, and that Court, in lieu of granting leave, vacated this single part of our prior opinion—the holding that Makino "is personally liable as the guarantor of the mortgage purchase . . . ." *WNC Housing LP v Shelborne Dev Co LLC*, 500 Mich 928; 889 NW2d 485 (2017). The Supreme Court instructed us to reconsider this issue and, in doing so, to review the issue (1) de novo as matter of law, and (2) without relying on the testimony of David Shaffer, the executive vice president of WNC Associates, Inc., a managing partner of plaintiff WNC Housing LP. *Id*. We now do so, and we again find no basis on which to reverse the trial court's ruling.

Section 6.2(a) of the pertinent partnership agreement states, in part:

> The General Partner[1] hereby guarantees lien free Completion of Construction of the Apartment Housing on or before May 1, 2003 ("Completion Date") at a total development cost of not more than $4,556,885[] ("Development Budget"), which includes all hard and soft costs incident to the acquisition, development and construction of the Apartment Housing in accordance with the Construction Budget, the Construction Contract, and the Project Documents. At any time during construction and prior to Permanent Mortgage Commencement, if the Special Limited Partner ascertains that the Development Budget exceeds the sum of the Capital Contributions and the Mortgage amount then the General Partner shall be responsible for and shall be obligated to pay the difference thereof within thirty days of receiving written notice from the Special Limited Partner except as otherwise provided for in this Agreement.

Section 6.3 states, in part:

> From the date the first apartment unit in the Apartment Housing is available for its intended use until three consecutive months of Break-even Operations, the General Partner will immediately provide to the Partnership the necessary funds to pay Operating Deficits, which funds shall not be repayable, shall not change the Interest of any Partner and shall be considered a guaranteed payment to the Partnership for cost overruns.

Makino contends that her obligations under § 6.2(a) were not triggered in the present circumstances because that section only applied to the initial construction loan and not to the permanent mortgage issued after completion of construction, which became the subject of the debt purchase. She contends that § 6.2(b) bolsters this conclusion because it refers to remedies

---

[1] The parties do not dispute that Makino is encompassed by the term "General Partner" for purposes of this appeal.

available if the *construction lender* sends a notice of default.[2] She asserts that the monthly permanent mortgage payments are operating expenses and, as such, any liability against her with respect to them was limited under § 6.3 to a short period (i.e., until three consecutive months of break-even operations) that expired years ago.

We cannot agree with Makino's interpretation of the contractual language. As noted, § 6.2(a) states that the general partner:

> hereby guarantees lien free Completion of Construction of the Apartment Housing on or before May 1, 2003 ("Completion Date") at a total development cost of not more than $4,556,885[] ("Development Budget"), which includes all hard and soft costs incident to the acquisition, development and construction of the Apartment Housing in accordance with the Construction Budget, the Construction Contract, and the Project Documents.

The partnership agreement specifically defines "project documents" as "all documents relating to the Construction Loan, Mortgage Loan, Construction Contract, Title Policy and Partnership Agreement." In addition, in defining "mortgage loan," the agreement states that the mortgage funds "shall be used to retire the Construction Loan and, if there are any funds remaining, the Mortgage funds shall be used to retire any outstanding hard construction costs including labor and materials." We interpret contractual language according to its plain and ordinary meaning. *Wells Fargo Bank, NA v Cherryland Mall Ltd P'ship (On Remand)*, 300 Mich App 361, 386; 835 NW2d 593 (2013). A plain reading of the pertinent language reveals that the debt purchase was encompassed by § 6.2(a) as a "cost[] incident to the acquisition, development and construction of the Apartment Housing in accordance with the Construction Budget, the Construction Contract, and the Project Documents." The section refers to "all" hard and soft costs incident to "acquisition[.]" (Emphasis added.) Merriam Webster's Collegiate Dictionary (11th ed) defines "acquisition" as "the act of acquiring," and it defines "acquire" as "to get as one's own[.]" A debt purchase to *avoid foreclosure* is, therefore, a cost associated with acquiring the apartment housing.[3]

Accordingly, after comporting with the Supreme Court's directive, we again find Makino personally liable as guarantor of the mortgage purchase.

---

[2] We note, however, that § 6.2(b) also refers to options available if "a foreclosure action is commenced against the Partnership . . . ."

[3] It is true that, under the terms of the partnership agreement, if "cash expenses," which include "monthly Mortgage payments," exceed "cash receipts," an "operating deficit" can occur such that § 6.3 is triggered. However, that § 6.3 might apply for a specified period does not mean that § 6.2 does not *also* apply to the situation at hand. We note that "cash expenses" expressly include many more items than just the monthly mortgage payments.

We affirm with respect to the issue on remand.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly